## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLNOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Chelsea Dade, an individual, | ) | |
| | ) | Case No.:  1:20-cv-03660 |
| Plaintiff, | ) | |
| v. | ) | Honorable Franklin U. Valderrama |
| | ) | |
| Joint Commission on Accreditation of | ) | |
| Healthcare Organizations | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, Chelsea Dade (hereinafter "Plaintiff" or "Dade"), by and through her attorneys, Pietrucha Law Firm, LLC, for her Complaint against the Defendant, Joint Commission on Accreditation of Healthcare Organizations (hereinafter "Defendant" or "Joint Commission"), and in support thereof, states as follows:

## JURISDICTION AND VENUE

1.      This is a diversity action involving statutory and common law claims under Illinois law.

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events giving rise to Dade's claims occurred in this judicial district.

4.      This Court has personal jurisdiction over Defendant as Defendant committed torts within Illinois by discharging Plaintiff against clearly mandated public policy.

## THE PARTIES

5.      Plaintiff is an individual who resides in Fairfax County, Virginia.

6.      Plaintiff was employed full-time by Defendant but is no longer employed by Defendant.

7.      Defendant is an independent, non-for-profit tax-exempt organization that evaluates, accredits, and certifies health care organizations and programs throughout the United States, with headquarters in Oakbrook Terrace, Illinois in DuPage County, Illinois.

## GENERAL FACTS

8.      Plaintiff is an African-American female.

9.      In September 2018, Defendant hired Plaintiff as a Research Associate at the Oakbrook Terrace, Illinois location.

10.     In her role, Plaintiff was required to participate and assist with research, writing, revising, and analysis of data, including presentations at national conferences.

11.     Prior to working for Defendant, Plaintiff interned at the Illinois Department of Public Health (the "IDPH") where she assisted in health equity research and reporting, a topic she discussed often while employed by Defendant.

12.     Because of her IDPH internship, Plaintiff was aware of IDPH's Center for Minority Health Services as created by Illinois statute, and the state's goal to "*assess the health concerns of minority populations in Illinois and to assist in the creation and maintenance of culturally sensitive programs*."

13.     While employed by Defendant, Plaintiff was on a team of six research associates within Defendant's Department of Standards and Survey Methods (the "DSSM Department").

14.     Plaintiff reported directly to Jennifer Hurlburt ("Hurlburt"), Defendant's Assistant Director in the DSSM Department.

15.     To ensure that the employees under the DSSM Department worked in a collaborative manner, Defendant required these employees to meet often with their immediate manager and/or director.

16.     Although Plaintiff was scheduled to meet with Hurlburt 57 times during her time with the Defendant, Hurlburt cancelled 30 of those meetings with Plaintiff.

17.     While employed, Plaintiff complained many times about her work environment and raised the issues of health disparities and equity, pushing for more research on the topic.

18.     On or around November 20, 2018, Plaintiff discussed her racial disparity research concerns with Ruth Metsch ("Metsch"), Defendant's Associate Director, Employment/Employee Relations.

19.     In February 2019, when Plaintiff followed up on her concerns about how Defendant allegedly failed to adequately incorporate racial disparity research, Defendant told Plaintiff that her tone and behavior was aggressive.

20.     By February 28, 2019, Defendant abruptly terminated Plaintiff, not even allowing her to collect her belongings.

21.     Because of her sudden termination, Plaintiff requested an exit interview and an opportunity to retrieve her personal property left at her workstation.

22.     After Plaintiff's termination, on or around March 7, 2019, Defendant held a telephone exit interview.

23.     When Plaintiff received a copy of her personnel records, the records revealed an Interoffice Memorandum from Hulbert to Defendant's Director Mary Brockway dated February

25, 2019, wherein Defendant recommended Plaintiff's termination in part because Plaintiff conducted research and discussed projects on racial health equity and disparity, work "*that is not within the scope of her job and the department's established priorities*," and that was not a fit for the organization, as a whole.

24.    Even though Defendant claimed Plaintiff's efforts constituted unsatisfactory performance and attempted to silence her complaints, Defendant claims to care about racial disparities and equity in healthcare as evidenced by Defendant's social media posts and website.

a.)    For example, on or around January 18, 2021, Defendant posted the following statement online on Instagram.com:



b.)　　Additionally, as of January 25, 2021, Defendant's own website indicates Defendant

"…Stands for Racial Justice and Equity" addressing racism, and racism in healthcare:



The Joint Commission Stands for Racial Justice and Equity



25.     Defendant fired Plaintiff for complaining about Defendant's allegedly limited research on racial disparity in healthcare, undermining clearly mandated Illinois public policy.

26.     After Defendant fired Plaintiff, Plaintiff suffered both financially and emotionally, including but not limited to being forced to move out of state because she could no longer afford her home in Illinois, the overall stress and humiliation by her sudden unemployment and emotional distress from Defendant discharges her for complaining about topics, health equity and racial disparity, clearly mandated by Illinois public policy.

## COUNT I
## RETALIATORY DISCHARGE

27.     Plaintiff restates and realleges paragraphs 1-26 as if fully repleaded herein.

28.     Plaintiff was terminated when she complained about Defendant's allegedly limited research on racial disparity in healthcare, undermining clearly mandated Illinois public policy.

29.     As a direct and proximate result of Defendant's retaliatory discharge, Plaintiff has suffered damages, including, but without limitation, lost income, lost benefits, emotional distress, and damage to her reputation.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered against the Defendant, and that this Honorable Court award her the following relief:

A.     Lost wages;
B.     Future wages;
C.     Damages for emotional pain, suffering, embarrassment, humiliation and distress;
D.     Punitive damages in an amount to be determined by a jury;
E.     Attorneys' fees and costs of this action;
F.     Expert witness costs; and
G.     Any such further relief as this Honorable Court finds reasonable.

## JURY DEMAND

Plaintiff hereby requests a jury trial.

Respectfully submitted,
CHELSEA DADE

**By:**   **/s/ Cynthia N. Pietrucha**
One of Her Attorneys

Cynthia N. Pietrucha
PIETRUCHA LAW FIRM, LLC
1717 N. Naper Blvd., Suite 200
Naperville, Illinois 60563
Telephone:  (630) 344-6370
cpietrucha@pietruchalaw.com

## CERTIFICATE OF SERVICE

I, Cynthia N. Pietrucha, certify that on January 25, 2021, I caused the foregoing **First Amended Complaint** to be filed through the Court's CM/ECF System, which will provide notice of such filing to Defendant's counsel of record.

*/s/ Cynthia N. Pietrucha*
Cynthia N. Pietrucha